560-06/MEU/PLS
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

TITAN MARITIME LTD.,                                              **06 CIV. 13505(JSR)**

                              Plaintiff,              .           **ECF CASE**

        -against-                                        **DECLARATION OF PAUL
                                                         WATSON IN SUPPORT OF
ROTOMAC EXPORT PVT LTD. OF KANPUR,                       PLAINTIFF'S MOTION TO
INDIA a/k/a ROTOMAC EXPORT PVT LTD. and                      RECOGNIZE AND
FROST INTERNATIONAL LTD.,                                 ENFORCE ARBITRAL
                                                                AWARD
                              Defendants.
-----------------------------------------------------------------x

        PAUL WATSON, pursuant to Section 1746 of Title 28 of the United States Code,

hereby declares and says the following under penalty of perjury:

        1.      I am a solicitor with North Insurance Management, Managers on behalf of

the North of England Protection and Indemnity Association Limited ("NEPIA") with a

Registered Office at The Quayside, Newcastle Upon Tyne, NE1 3DU United Kingdom.

NEPIA provides legal services to its members in respect of charter party disputes and

Plaintiff TITAN MARITIME LTD. ("TITAN") is entered as a member of the NEPIA

Defence Club.

        2.      I personally conducted the arbitration of this matter on behalf of Plaintiff

TITAN, and I am fully familiar with the facts and circumstances of the dispute between

the parties, the arbitration between the parties, and all of the proceedings between the

parties to date.  I am fully authorized to make this Declaration on TITAN's behalf in

support of its application to reduce the arbitral award issued in this matter to a Judgment

of this Court.  Insofar as the contents of this Declaration are within my own knowledge

they are true.  Insofar as the contents of this Declaration are not within my own direct

knowledge, they are true to the best of my information and belief.

NYDOCS1/290070.2

3.     The dispute between TITAN and Defendant, ROTOMAC EXPORT PVT LTD. OF KANPUR, INDIA a/k/a ROTOMAC EXPORT PVT LTD. ("ROTOMAC") arose under a maritime contract of charter party which required the parties to submit all disputes to arbitration at London, England, to be decided pursuant to English law. The agreement to arbitrate provided further that claims under $100,000 in value were to be decided pursuant to the small claims procedures of the London Maritime Arbitration Association ("LMAA"). I certify that a true copy of the charter, signed by (or on behalf of) both parties, is annexed hereto as Ex. 1. The written agreement to arbitrate is found at Box 25 and clauses 19 and 29 of the charter.

4.     Under the charter, TITAN was owed demurrage because ROTOMAC used more time to load and discharge a cargo of bulk iron ore than was allowed under the contract terms.    In addition, TITAN suffered further damages when ROTOMAC discharged cargo in a port that was not agreed upon in the charter.

5.     Despite due demand, ROTOMAC refused to pay TITAN the demurrage and other amounts due and owing, and in January 2007, TITAN demanded arbitration with ROTOMAC and the parties agreed to the appointment of Mr. Patrick O'Donovan as sole arbitrator.

6.     TITAN's claim submissions were served by NEPIA upon ROTOMAC via Defendant's brokers on January 22, 2007.

7.     Copies of the submissions, together with supporting documents, were also served by hand on ROTOMAC on March 7, 2007 via TITAN's Indian lawyers. ROTOMAC acknowledged service by stamping the claim submissions.

8.    The Arbitrator sent to ROTOMAC via e-mail dated April 18, 2007 and also via hand service (stamped received by ROTOMAC on May 4, 2007) notice by means of arbitral order that the last day the LMAA would accept submissions from ROTOMAC was May 18, 2007, in accordance with LMAA Small Claims Procedures.

9.    ROTOMAC was given every opportunity to present defense submissions within the deadlines established by the LMAA Small Claims Procedures: ROTOMAC was initially given 28 days in which to serve their submissions, and thereafter the arbitrator allowed ROTOMAC an additional 14 days to serve their submissions from the date his arbitral order was served by hand upon ROTOMAC.

10.    ROTOMAC deliberately declined to present submissions within the established deadlines.

11.    Accordingly, the arbitral tribunal proceeded to consider the matter based on the TITAN submissions only.

12.    ROTOMAC attempted to serve submissions on June 12 and June 19, 2007, which was past the May 18, 2007 deadline for submissions set by the Arbitrator as provided by the LMAA rules.

13.    The LMAA rejected the submissions as untimely and proceeded to consider the claims based upon the submissions that had been submitted timely in accordance with LMAA Small Claims Procedures.

14.    Ultimately, an arbitral award was rendered in favor of TITAN and against ROTOMAC on July 17, 2007.  I certify that a true copy of that award is annexed hereto as Ex. 2.

15.    The award directed ROTOMAC to pay TITAN the sum of $99,353.30 in damages on its principal claim. The award also required ROTOMAC to pay interest on this sum at the rate of 7.75% per annum or pro rata compounded quarterly from November 3, 2006 until paid. The award also directed ROTOMAC to pay TITAN "costs" of £2,000 (equivalent to $4,144.30 using the current conversion rate of £1=$2.07215) together with interest thereon at the rate of 7.75% per annum or pro rata compounded quarterly from July 17, 2007 until paid. The award further directed ROTOMAC to reimburse TITAN for the costs of the award of £1,500 ($4,144.30) together with interest thereon at the rate of 7.75% per annum or pro rata compounded quarterly from December 27, 2006 until reimbursed. This award is final and conclusive between the parties and has not been appealed.

16.    TITAN provided a copy of the award to ROTOMAC on July 17, 2007 and has repeatedly demanded payment of ROTOMAC for the amounts due thereunder. ROTOMAC, in bad faith, has refused or otherwise failed to make any payment against the award.

17.    Both the United Kingdom and the United States are parties to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The New York Convention provides that upon supplying certified copies of the agreement to arbitrate and the arbitral award, a court in a nation that is party to the New York Convention must recognize and enforce that award as a domestic judgment, if it is made timely, and if none of the few reasons designated in the Convention for non-recognition are present.

18.  This application is timely as the award was issued in July 2007 which is well within the three-year time period permitted under the New York Convention, and it is respectfully submitted that none of the designated reasons listed in the Convention for non-recognition can in good faith be raised here by ROTOMAC.

19.  Accordingly, recognition and enforcement of the arbitral Award rendered in London before the LMAA should be had, and the Award should be made a Judgment of this Court.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Newcastle Upon Tyne, England
       October 11th 2007

_____
                Paul Watson

# EXHIBIT 1

| 1.Shipbroker | RECOMMENDED |
|---|---|
| GREYSTONE SHIPPING LTD.<br>14TH FLOOR, YORK HOUSE<br>EMPIRE WAY<br>WEMBLEY<br>ENGLAND<br>HA9 0PA | THE BALTIC AND INTERNATIONAL MARITIME COUNCIL.<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976and1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON"                    Part I |

**2.Place and date**

LONDON, 1ST AUGUST 2006

| 3 Owners / Place of business (Cl.1) | 4 Charterers/Place of business (Cl 1) |
|---|---|
| TITAN MARITIME COMPANY LIMITED<br>VALLETTA MALTA | M/S ROTOMAC EXPORT PVT LTD OF KANPUR., INDIA<br>201 CITY CENTRE 63/2, THE MALL<br>KANPUR – 208004 INDIA |

| 5 Vessel's name (Cl.1) | 6.GRT/NRT (Cl.1) |
|---|---|
| MV ALINDA | |

| 7 DWT all told on summer load line in metric tons (abt.) (Cl.1) | 8.Present position (Cl. 1) |
|---|---|
| 38,306 MTS. / 9.767 MTRS.<br>9 Expected ready to load (abt.) (Cl.1) | TRADING |

| 04 AUGUST 2006 (0001 HOURS LT) | |
|---|---|
| 10. Loading port or place (Cl.1) | 11 Discharging port or place (Cl. 4) |
| 1 SB 1 SP HALDIA UPTO DRAFT + 1 SB SP PARADIP | 1SB 1SP CHINA (ORIENTATION LINE) OR RIZHAO,N |

12. Cargo(also state quantity and margin in Owner's option. If agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)

MINIUMUM 37200 MT SPC MORE IN OWNERS' OPTION BULK IRON ORE.

| 13.Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4) | 14. Freight payment(state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
|---|---|
| US$ 18.50 PMT BASIS 2/1 | SEE CLAUSE 24 |

| 15 State if vessel's cargo handling gear shall not be used (Cl. 5) | 16.Laytime (if separate laytime for load. and disch. is agreed  fill in a) and b). If total laytime for load. and disch., fill in c.) only) (Cl. 6) |
|---|---|
| 17.Shippers/Place of business (Cl.6)<br>FROST INTERNATIONAL LTD. KANPUR | a)Laytime for loading<br>LOADING RATE: 6000 MTS PWWD SHINC AT BOTH LOAD PORTS BASIS WORKABLE 5 HOOKS. IF SHORE CRANE LOADING AT PARADIP THEN 8,000 MTS PWWD SHINC. |
| 18. Agents (loading) (Cl. 6)<br>CHARTERERS' AGENTS | b)Laytime for discharging<br>DISCHARGING RATE: CQD DISCHARGE [CHARTERERS GUARANTEE MIN 8,000 MTS PWWD SHINC – IT IS HERBY UNDERSTOOD THAT OWNERS ARE ENTITLED TO GIVE A NOTICE ON ARRIVAL AND LAYTIME TO START COUNTING 12 HOURS LATER AS PER CLAUSE47. |
| 19 Agents (discharging) (Cl. 6)<br><br>SEE CLAUSE 25. | c)Total laytime for loading and discharging |
| 20 Demurrage rate and manner payable(loading and discharging) (Cl. 7)<br>DEM. USD 8,000/ HALF DESPATCH TO BE SETTLED AFTER COMPLETION OF DISCHARGE OF CARGO WITHIN 15 DAYS UPON<br>Freight Tax (state if for the Owners' account (Cl. 13Q)<br>FOR OWNER'S ACCOUNT | 21 Cancelling date (Cl 9<br>09 AUGUST 2006 (2400 HRS LT)<br>22.General Average to be adjusted at (Cl. 12) LONDON<br>24.Brokerage commission and to whom payable (Cl. 15)<br>6.25% TOTAL PAYABLE OUT OF 100% FREIGHT.<br>PLEASE SEE CLAUSE 46. |
| 25. Law and Arbitration (state 19(a), 19(b) or 19(c) of Cl 19; if 19(c) agreed also state Place of Arbitration) (if not filled in 19(a) shall apply) (Cl.. 19)<br>ENGLISH LAW / ARBITRATION IN LONDON.<br>(a) State maximum amount for small claims/shortened arbitration (Cl 19)<br>FOR ANY DISPUTE NOT EXCEEDING USD100,00 THEN BOTH PRINCIPALS AGREE TO SETTLE SUCH DISPUTE IN ACCORDANCE WITH LMAA SMALL CLAIMS PROCEDURE. | 26 Additional clauses covering special provisions, if agreed<br>ADDITIONAL CLAUSES 18 TO 47 BOTH INCLUSIVE. |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

Signature (Owners)                                     Signature (Charterers)

**PART II**
"Gencon" Charter As Revised 1922, 1976 and 1994

PART II
General Charter (As Revised 1922, 1976 and 1994)

8. Lien Clause

17. Cancelling Clause

10. Bills of Lading    SEE RIDER CLAUSES

11. Both-to-Blame Collision Clause

12. General Average and New Jason Clause

13. Taxes and Dues Clause

14. Agency    (Clause)

15. Brokerage

16. General Strike Clause

PART II

Gencon' Charter (As Revised 1922, 1976 and 1994)

PART II
'Gencon' Charter (As Revised 1922, 1976 and 1994)

**RIDER CLAUSES**
**MV ALINDA**
**CHARTER PARTY DATED LONDON, 1ST AUGUST 2006**

### Clause Clause 18. Vessel's description

**MV ALINDA**
1977
MALTA FLAG
28.306 MT DWAT ON 9.767M SSW
LOA/BEAM 179.7M / 25M
6HO/HA : 1/ 10.5MX 11.2M  2/6 EACH 12.25M X 11.2M
GRAIN MAIN HO 1,208,386 CFT
5 X 15T CRANES SERVICING ALL HOLDS
NO CRANEDRIVERS FROM SHIPS CREW
NO TWO CRANES TO BE WORKED SIMULTANEOUSLY AT THE SAME HATCH
GRAIN BDOWN:
165023/206985/209294/209294/209294/208496 CFT
VESSEL IS NOT GRAB FITTED
ALL DETAILS ABT.

Owners have faxed the following documents to Charterers:
(a) Ship's Registry, (b), Owners P & I entry certificate.

### Clause 19. Vessel's readiness for loading

At loading port, Owners are to tender vessel with holds property swept, cleaned, dried, free of previous cargo and in all respect ready to receive the cargo. Owners confirm that vessel's holds are clean and suitable for the carriage of intended cargo.

### Clause 20. Notice of Readiness and Laytime at Loading Port

Notification of the vessel's readiness at loading port to be given by Master/Owners in writing or by cable or by telex or by fax or by VHF to Charterers and/or their Agents at any time SHINC whether in port or not, whether in berth or not, whether in free pratique or not, and whether in customs clearance or not.

### Clause 21. Demurrage / Despatch

Demurrage/despatch: Demurrage USD 8,000/half despatch to be setled after completion of discharge of cargo within 15 days upon receiving Owners/Charterers claim along with supporting documents like SOF, NOR, TS copies, please also see Clause 44.

### Clause 22. Stevedores

Stevedores to be appointed and paid for by the Charterers or Shippers/Receivers.
Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society. Any time lost to be paid by Charterers at rate of demurrage for detention.

1

# RIDER CLAUSES
## MV ALINDA
## CHARTER PARTY DATED LONDON, I$^{ST}$ AUGUST 2006

### Clause 23. Overtime
At loading and discharging ports, overtime to be for account of party ordering same but if ordered by port authority then same to be for Charterers account. Overtime for Officers and crews to be for Owner's account

### Clause 24. Freight Payment
Full freight less 3.75% per cent commission to be deducted and to be paid to Owner's nominated account free of bank charges to Owners' account within five (5) banking days after completion of loading, signing and releasing Bills of lading to be marked "Freight payable as per charter party" and to show date of this C/P.

### Clause 25. Agents
Charterers agents to be used at ports of loading and discharging.

Loadport Agent:
  BALAILAL MOOKERJEE & CO. (P) LTD.
  CHARTER BROKERS + STEAMER AGENTS
  25 SWALLOW LANE, KOLKATA-700001, INDIA
  TEL : +91-33-22308181/2
  FAX : +91-33-22309639
  Contact Person: Mr.ARUP MOOKERJEE

Charterers' Agent, subject reasonable port D/A's after Owners' approval.

Discharge port agent:

Charterers' agent nominated agent.

Charterers agents both ends are acceptable subject to customary competitive PDA plus customary agency fee and also subject to charterers agents will have complete co-ordination/co-operation with Owner's protective agents for any paper work/formalities which needed by owners at loadport for tax purposes.

### Clause 25(a). Lighterage/lightening

Lighterage/lightening at loading and discharging ports, if any, to be for Charterers arrangements / account / time / risk.

### Clause 26. Taxes/Dues
Any taxes/dues/wharfages at loadprt/discharge port if any on cargo to be for Charterers' account and same on vessel A/O freight to be for Owners' account both ends.

### Clause 27. Inaccessible Space
No cargo to be loaded in bunker spaces, deep tank, far ends, alleyways or any other places not easily accessible.

### Clause 28. Standard Clauses
Chamber of Shipping War Risk Clauses 1 & 2 the amended or New Both-to-Blame Collision Clauses. The New Jason Clauses and P & I Bunker Deviation, BIMCO Double Banking Clauses, The General Paramount Clause and The BIMCO ISPS Clause for voyage Charterers are deemed to be fully incorporated in this Charter Party.

### Clause 29. Arbitration

Arbitration in London, English Law to apply · BIMCO's standard law and arbitration clause to be incorporated in the Charter Party.

2

**RIDER CLAUSES**
**MV ALINDA**
**CHARTER PARTY DATED LONDON, 1ST AUGUST 2006**

**Clause 30. Extra insurance of cargo**

Vessel more than 20 years Owners to contribute USD 3,000 lumpsum to Charterers.

**Clause 31. Owners Bankers**

Freight to be remitted to :-

| | |
|---|---|
| OWNERS BANKERS | : ABN AMRO BANK |
| | 348 SYNGROU AVENUE |
| | 176 74 ATHENS |
| | GREECE |
| : SWIFT | : ABNAGRAP |
| | : IBAN NO.:  GR52 0801 0950 0000 0000 0623 296 |
| BENEFICIARY | : TITAN MARITIME COMPANY LIMITED |
| BENEFICIARY'S A/C | : 095/00.06 23.296 USD |
| NY COVER | : ABN AMRO BANK |
| | : SWIFT: ABNAUS33 |
| | : ABA  : 026009580 |

**Clause 32. Notices and information during sea passage**

At loadport, the Owners/Master to tender notice on fixing to Agents and Charterers. On sailing loading port, Master/Owners to advise Charterers, loaded quantity and ETA port of discharging. During passage, Owners/Master to update position/approximate ETA basis 1 SB SP China (Lienyungang or Rizhao). Master/Owners to give 3/2/1 days  and 12 hours both ends approximate arrival notice to Agents discharge port and Charterers followed definite notice.

**Clause 33. Incorporation of Charter party terms**

All terms and conditions, clauses and exceptions contained in this Charter Party to apply and all Bills of Lading issued under this Charter Party and are deemed to be incorporated therein.

**Clause 34.  Bills of Lading**

Bills of lading to be issued on "Congen Bill" edition 1994 proforma.
Bills of Lading to be marked "**FIOST**" and "**All terms and conditions, clauses and exceptions contained in Charter Party dated 1st August, 2006 are herewith incorporated**".

All Bills of Lading issued under this Charter Party to incorporate the Clause Paramount  Vessel to be left in seaworthy trim between load/discharge ports/berths always to the Master's satisfaction.

No original Bills of Lading to be carried on board vessel during seapassage.

No through or liner Bills of Lading to be issued.

In case multiple Bills of Lading will be issued, vessel/Master not to be responsible for the distribution of the cargo to various receivers.

3

RIDER CLAUSES
MV ALINDA
CHARTER PARTY DATED LONDON, 1ST AUGUST 2006

#### Clause 35. Determination of cargo quantity

The quantity of cargo on board to be ascertained as per joint survey. Time for joint survey to be for owner's account and cost of such joint survey operation to be shared equally between Owners and charterers at both ends.

#### Clause 36. Cargo Claims

Damage to and claims on cargo shall be for Owners' account if caused by unseaworthiness of the vessel and/or failure on their part to properly carry, keep and care for the goods while on board unless the Owners proves that unseaworthiness was caused by the loading, stowage, lashing, discharge or other handling of the cargo, in which case such claim shall be for Charterers' account.

#### Clause 37. Time counting

Time to count after tendering of NOR ATDNSHINC and 12 hours turning time both ends unless sooner commenced.

#### Clause 38. Ventilation Clause

Ventilation, if required, to be done as per Charterers' written instruction. In case having questions about ventilation of the cargo, Master has the right to ask Charterers for relevant recommendation and Charterers should reply on Master's enquiry.

#### Clause 39. Shifting

First shifting from anchorage to the berth at both ends to be for Owner's account. It is expressly agreed that shifting from the loading / discharging berth to road and back due to arrival of liner and / or other preferential vessel and / or port orders always to be for Charterers' time and expenses.

Time and expenses for first opening and last closing of hatch covers to be for Owner's account.

#### Clause 40. Cancelling Clause

In case delay due to objective reason vessel can loose cancelling date, Owners may ask Charterers about extension of cancelling date. Charterers should advise their decision to cancel or extend laycan within 24 running hours after receipt of such written notification from the Owners, otherwise cancelling date to be considered as extended in accordance with the Owners' request.

#### Clause 41 Waiting of suitable tide

Any time lost for waiting suitable tide allowing vessel to sail from loading and / or discharging port after completion of cargo operations to count as laytime.

#### Clause 42 Loading of metal concentrates

Deleted.

4

## RIDER CLAUSES
## MV ALINDA
## CHARTER PARTY DATED LONDON, 1ST AUGUST 2006

**Clause 43. Grab arrangements**

Supply of grabs should be arranged by Charterers for their account. Owners will accept use of 6-8 CBM grabs and supply power from ship free of charge to Charterers.

Maximum weight of cargo and grab to be max 14 MTS.

**Clause 44. Non-reversible laytime**

Laytime non-reversible between any ports and separate timesheets to be issued for each port

**Clause 45  LOI in lieu of Original B/L.**

In case original Bills of Lading would not be ready upon vessel's arrival at discharge port, owners allow to discharge cargo upon arrival against Charterers' single LOI and signed by Charterers and receivers. Such LOI in Owner's P&I Club wordings.

**Clause 46  Total Commission**

6.25 per cent total commission (including 3.75 per cent for division which includes additional commission +1.25 per cent for Greystone Shipping Ltd + 1.25% for Lightship Singapore.

**Clause 47**

Owners to allow free use of vessel's cranes and no cranedrivers to be supplied from ship's crew, i.e. ship crew not to operate ship's gear.

Owners                                                          Charterers

_____                                          _____

5

# EXHIBIT 2

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

### TITAN MARITIME COMPANY LIMITED
of Valletta, Malta                            Claimants

(Owners)


- and -


### M/S ROTOMAC EXPORT PVT LTD.
of Kanpur, India                            Respondents

(Charterers)


"ALINDA"

Charterparty dated 1st August 2006


FINAL ARBITRATION AWARD


WHEREAS:

1.  By a charterparty on a GENCON 1994 form with amendments and additional typed clauses dated London, 1st August 2006, the Claimants (hereinafter referred to as "the Owners") chartered their motor vessel

-2-

"ALINDA" to the Respondents (hereinafter referred to as "the Charterers")
for the carriage of *"MINIMUM 27,200MT 5PC MORE IN OWNERS'
OPTION BULK IRON ORE"* from *"1SB 1SP HALDIA ... +1SB SP
PARADIP"* to *"1SB 1SP CHINA (LIENYUNGANG OR RIZHAO)"* on terms
and conditions more particularly set out in the said charterparty. In the
event, the vessel discharged at Xingang in circumstances described more
fully below.

2.   Box 25 and clauses 19 and 29 provided for arbitration in London and for
     English law to apply. Clause 29 incorporated the BIMCO standard law and
     arbitration clause. Clause 25 provided that any disputes not exceeding
     US$100,000 were to be dealt with in accordance with the LMAA Small
     Claims Procedure.

3.   Disputes, hereinafter more particularly defined, arose between the parties.
     Following discussions between the parties, the Charterers put forward three
     names who would be acceptable to them to act as sole arbitrator including
     me, Patrick O'Donovan of Churcham House, 1 Bridgeman Road, Teddington,
     Middlesex, TW11 9AJ. The Owners responded by agreeing to my
     appointment and accordingly I accepted the appointment as sole arbitrator
     under the LMAA Small Claims Procedure 2006. I am a Member of the Baltic
     Exchange in the City of London and a Full Member of the London Maritime
     Arbitrators Association ("the LMAA").

4.   Pursuant to the provisions of the charterparty referred to in Recital 2 above,
     the seat of the arbitration is in England.

5.   The disputed referred to me concerned the Owners' claim for their final
     freight invoice in the sum of US$99,353.30 representing predominantly net
     demurrage and damages for what was said to be a breach by the Charterers
     in ordering the vessel to discharge at Xingang notwithstanding (the Owners
     said) that this was an uncontractual discharge port, Lienyungang or Rizhao

-3-

being the only discharge ports at which the Owners were contractually
obliged to discharge the cargo.  The Owners also claimed interest thereon
and their costs.   The Charterers denied liability for the sum claimed,
although they appeared to concede that there was some balance due to the
Owners.

6.      The Owners were represented by their Defence Club, North Insurance
        Management Ltd/North of England P&I Association Ltd. ("NOE").   The
        Charterers were not represented and (save for the steps taken by them in
        agreeing me as sole arbitrator) as appears below they played no active part
        in the reference, although they were throughout aware of the proceedings, of
        the sums claimed against them and the orders made by me in the reference.

7.      Claim submissions were served via the brokers, Greystone Shipping Ltd
        ("Greystone"), by way of a letter from NOE dated 22nd January 2007.  Those
        claim submissions together with supporting documentation were served on
        the Charterers by hand on 7th March 2007, as evidenced by an Affidavit of
        Service from the Owners' Indian Lawyers, Prashant S. Pratap Law Office.
        The Charterers acknowledged service by stamping the claim submissions
        and the first and last page of the Appendix comprising the supporting
        documents.

8.      By fax on 5th April 2007, the Owners requested an order that the Charterers
        serve their defence submissions within 14 days, failing which I would
        proceed to my Award on the basis of the claim submissions and the
        documents annexed thereto.

9.      By e-mail on 18th April 2007, sent via Greystone, I gave the following
        directions:

            *"You will recall that I have been appointed as sole arbitrator in this matter which is
            being handled under the LMAA Small Claims Procedure (2006).*

-4-

> *Claim submissions were served by the North of England P&I Association (the Defence Class Insurers of Titan Maritime Company Ltd, the Owners of the vessel) and I understand that these together with the Appendix were served on you by hand on 7th March 2007.*

> *The Small Claims Procedure requires the letter of defence and details of counterclaim (if any), accompanied in each case by copies of all relevant documents including any experts' reports, to be delivered to the claimant within 28 days from receipt of the letter of claim or from the date of the appointment of the arbitrator, whichever is the later. Accordingly, your letter of defence and any counterclaim was due on 4th April.*

> *The North of England have now applied for an order that your letter of defence (and any counterclaim) be served within 14 days. I should say that the Small Claims Procedure contains a fixed procedure with fixed time limits and any extension to the time limits laid down must be applied for before expiry of the existing time limit. That has not happened in this case.*

> *Accordingly, I now give you notice pursuant to paragraph 5(d) of the Small Claims Procedure that unless the outstanding letter of defence (and counterclaim) is received by me and by the Respondents within 14 days of service of this notice upon you, I will proceed to my award on the basis of the submissions and documents before me to the exclusion of all others. You should be aware that any pleadings submitted by you subsequent to the expiry of this time limit will not be admissible (again as provided for in paragraph 5(d) of the Small Claims Procedure)."*

A copy of that message was served by hand on the Charterers on 4th May 2007, as evidenced by an e-mail from the Owners' Indian lawyers dated 2nd June 2007. The Charterers acknowledged receipt of the order and the associated documentation by signing and stamping the covering letter from the Owners' Indian lawyer.

10. In the light of my earlier order, the last date for service of the outstanding letter of defence was 14 days after 4th May 2007, namely 18th May 2007. No such submissions were served within the deadline.

-5-

11. Nevertheless, by fax on 12th June 2007, the Charterers purported to serve defence submissions, together with some supporting documents. By fax on 19th June 2007, the Charterers purported to serve their laytime calculations. However, the terms of the Small Claims Procedure and of my order of 18th April 2007 are quite clear, namely that because of the paragraph 5(d) notice given by me on 18th April 2007, any pleadings submitted by the Charterers subsequent to the expiry of the time limit are not admissible.

12. By fax and e-mail on 29th June 2007, I sent the following message to the parties by e-mail and via Greystone.

> *"I refer to the recent exchanges. In my fax of 18th April 2007 I gave notice pursuant to paragraph 5(d) of the Small Claims Procedure that unless the outstanding letter of defence (and any counterclaim) was received by me and by the Claimants (although I mistakenly said Respondents) within 14 days of service of that notice on Rotomac Export Pvt. Ltd., I would proceed to my Award on the basis of the submissions and documents before me, to the exclusion of all others. I pointed out that paragraph 5(d) of the Small Claims Procedure provides:*
>
> > *"Any pleading submitted by the defaulting party subsequent to expiry of the time limit set by the arbitrators' notice shall not be admissible".*
>
> *That notice was sent c/o Greystone Shipping and also served on the Respondents on 4th May 2007 as attested to in an Affidavit sworn by an Advocate in Kanpur. Accordingly, the latest date for service of defence submissions was 18th May 2007. No letter of defence was served within that deadline. The Respondents purported to serve a letter of defence on 12th June 2007 but, pursuant to paragraph 5(d) of the Small Claims Procedure, that letter is not admissible in these arbitration proceedings (as was made clear in my notice of 18th April 2007).*
>
> *Accordingly, I am now proceeding to my Award on the basis of the letter of claim alone."*

13. I am satisfied that the Charterers have been given every opportunity to participate and to serve submissions in the arbitration but they have deliberately declined to do so. They were plainly aware of the proceedings, of the sums claimed against them and of the orders made by me in the reference. Accordingly, I thereafter proceeded to consider the matter on the

-6-

basis stated, pursuant to paragraph 5(d) of the Small Claims Procedure. I
should stress that, although no admissible defence submissions were served
by the Charterers, I considered it my duty carefully to consider the merits of
the claim before me and to scrutinise the documentation submitted by the
Owners in order to determine whether or not the claim had been proved on
the balance of probabilities and whether or not it was properly evidenced and
correctly calculated.

### Discussion and my findings

- ### The relevant contractual provisions

14. The charterparty provided, where relevant, as follows

> *"Box 11 Discharging port or place ...*
> *1SB 1 SP CHINA (LIENYUNGANG OR RIZHAO)*

> *Box 12 Cargo ...*
> *MINIMUM 27,200MT 5PC MORE IN OWNERS' OPTION BULK IRON ORE.*

> *Box 13 Freight rate...*
> *US$18.50 PMT BASIS 2/1*

> *Box 16 Laytime ...*
> A)       *LAYTIME FOR LOADING*
>       *LOADING RATE 6,000 MTS PWWD SHINC AT BOTH LOADPORTS*
>       *BASIS WORKABLE 5 HOOKS. IF SHORE CRANE LOADING AT*
>       *PARADIP THEN 3,000 MTS PWWD SHINC.*
> B)       *LAYTIME FOR DISCHARGING*
>       *DISCHARGING RATE CQD DISCHARGE (CHARTERERS GUARANTEE*
>       *MIN 8,000MTS PWWD SHINC – IT IS HEREBY UNDERSTOOD THAT*
>       *OWNERS ARE ENTITLED TO GIVE A NOTICE ON ARRIVAL AND*
>       *LAYTIME TO START COUNTING 12 HOURS LATER AS PER CLAUSE*
>       *37.*

-7-

> Box 20 Demurrage rate ...
> DEM. USD8,000/HALF DESPATCH TO BE SETTLED AFTER COMPLETION OF
> DISCHARGE OF CARGO WITHIN 15 DAYS UPON ...
>
> Box 24 Brokerage commission ...
> 6.25% TOTAL PAYABLE OUT OF 100% FREIGHT
>
> ...
>
> Clause 37.  Time Counting
> Time to count after tendering NOR ATDNSHINC and 12 hours turning time both ends
> unless sooner commenced.
>
> Clause 44.  Non-reversible laytime
> Laytime non-reversible between any ports and separate time sheets to be issued for each
> port."

- **Laytime/demurrage at Haldia**

15.  The vessel arrived at Haldia and tendered NOR at 1430 on 7th August 2006
with laytime commencing at 0230 the following day.  The vessel berthed at
1635 on 14th August 2006.  The Vessel completed loading at 0215 on 19th
August 2006.  A total of 20,266mt of cargo was loaded and therefore the total
laytime allowed for the operation was 3 days 9 hours and 4 minutes.  The
vessel was therefore on demurrage for 6 days 2 hours and 20 minutes
amounting to gross demurrage in the sum of US$48,777.78 (US$46,948.61
net of commission).

- **Laytime/demurrage at Paradip**

16.  The Vessel thereafter proceeded to Paradip and tendered NOR at 2010 on
19th August 2006.  Laytime commenced 12 hours later at 0810 the following
day.   The vessel berthed at 0900 on 23rd August 2006 with loading
commencing at 1045 on that day.  Loading was completed at 0500 on 24th
August 2006.  A total of 6,000mt of cargo was loaded with the effect that
laytime expired at 0810 on 21st August 2006.  Accordingly, the Vessel was on

—8—

demurrage for a further 2 days 19 hours and 2 minutes amounting to total gross demurrage in the sum of US$22,344.44 (US$21,506.52 net of commission).

- **The order to discharge at Xingang**

17. The Owners very fairly made me aware of the dispute between the parties (as reflected in correspondence before I was appointed) relating to the question of whether an order to discharge at Xingang was uncontractual or not. It was the Owners' case that the express reference to Lienyungang or Rizhao in the charterparty constituted a discharge port range, with the Charterers being contractually bound to discharge at one or other port. Again, very fairly, the Owners told me that it was the Charterers' case that the reference to *"one safe port China"* entitled them to order the vessel to discharge at any port in China and that the ports specified in brackets merely represented an intention on their part but did not amount to a binding commitment or otherwise limit or restrict their right to select any port in China for discharge.

18. I have no hesitation in agreeing with the Owners' construction, which is undoubtedly correct. If the Charterers' interpretation of the clause were correct, then there would have been no need for them to identify any particular port in China, because to do so would have added nothing to the charterparty. It was clear that the reason why Lienyungang or Rizhao was specified was not because it expressed an intention on the Charterers' part but rather that it gave the Charterers the right of selection between those two ports and operated as a qualification to discharge in China. In short, the words *"Lienyungang or Rizhao"*, limited the Charterers' right to discharge at either one safe berth one safe port Lienyungang or one safe berth one safe port Rizhao.

Case 1:06-cv-13505-JSR   Document 13   Filed 12/06/2007   Page 27 of 30
Fax sent by : 02089773052 )   PATRICK ODONOVAN   1͡   ⌐07 13:21   Pg: 18/13

- 9 -

19. Such a construction makes perfect commercial sense. The Owners had agreed a freight rate of US$18.50 pmt based on discharge at either of those two ports. Additional time and fuel costs would have been involved in discharge at a more Northerly Chinese port (as, indeed, was the case in relation to the actual discharge at Xingang – a topic to which I return below).

20. In agreeing to discharge at Xingang, the Owners did not waive any rights that they might otherwise have had under the charterparty (in particular, their right to claim damages for the consequences of compliance with an invalid order), nor were they estopped from asserting their existing rights under the charterparty or from claiming damages. It was quite clear from the correspondence that the Owners consistently maintained that the charterparty provided that the only discharge ports capable of a valid nomination were Lienyungang and Rizhao. As the Owners said in their e-mail of 1st September 2006:

> "If Charterers require an alternative discharge port then Owners can consider same against their extra expenses being covered."

• **Laytime/despatch at Xingang**

21. Accordingly, the Vessel arrived at Xingang and tendered NOR at 0025 on 8th September 2006 with laytime commencing at 1225 on that day. Owners calculated a minimum discharge period of 3 days 6 hours and 49 minutes on the basis of 26,266mt of cargo with a guaranteed minimum discharge rate of 8,000mt per weather working day. In the event, the Vessel berthed at 1615 on 8th September, commencing discharge at 1840 on that day. Discharge completed at 1220 on 9th September 2006. There was therefore a time saving of 2 days 6 hours and 54 minutes amounting to total despatch in the sum of US$9,150. However, the Owners allowed despatch of US$9,561 in their Final Freight Statement and, in the circumstances, that is the figure that I have found it appropriate to take in calculating the final balance of account.

– 10 –

- **Damages for discharge at Xingang**

22. The Owners claimed damages of US$41,153 in respect of losses that they
said they had sustained by reason of the Charterers' breach of charterparty
in discharging at Xingang. I have already found above that a breach was
established because of the proper construction of the charterparty. I am
satisfied that the Owners have correctly calculated their damage at
US$43,508.50 in respect of hire, fuel oil and MDO based on the total
additional steaming time of 2 days 8 hours 13 minutes.

- **The final accounting position**

23. Accordingly, the final accounting position between the parties is as set out in
the Owners' final freight statement dated 27th October 2006 (a copy of which
is annexed hereto), namely a credit in the Owners' favour of US$99,353.30.
The Owners are entitled to an award in that amount, together with interest
thereon at a commercial rate from 3rd November 2006 which allows a
reasonable period after the submission of the final freight statement for the
checking of accounts. In line with the usual rule that costs follow the event
the Charterers must pay their own and the Owners' costs (which I have
assessed at the applicable maximum figure allowed under the Small Claims
Procedure of £2,000) as well as the costs of this Award (being the fixed fee
then payable of £1,500).

NOW I the said Arbitrator, Patrick O'Donovan, having accepted the burden of
this reference and having carefully and conscientiously considered the
submissions and evidence (all documentary) placed before me and having given
due weight thereto, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my
**FINAL ARBITRATION AWARD** as follows:

(A) **I FIND AND HOLD** that the Owners' claim succeeds in full in the sum of
US$99,353.30.

Fax sent by  : 02889773052     PATRICK ODONOVAN     17-07-07 13:21     Pg: 12/13

- 11 -

(B) **I THEREFORE AWARD AND ADJUDGE** that  the  Charterers  shall forthwith pay to the Owners the said sum of US$99,353.30 (Ninety-Nine Thousand Three Hundred and Fifty-Three United States Dollars and thirty cents) **PLUS** interest on the said sum at the rate of 7.75% (seven and three-quarters per cent) per annum or pro rata compounded at three monthly rests from 3rd November 2006 until the date of payment.

(C) **I FURTHER AWARD AND ADJUDGE:**

    (i)   that the Charterers shall bear their own costs and pay the Owners' costs of the reference which **I ASSESS AND DETERMINE** in the sum of £2,000 (Two Thousand Pounds Sterling); together with interest thereon at the rate of 7.75% (seven and three-quarters per cent) per annum or pro rata compounded at three-monthly rests from the date of this my Final Arbitration Award until the date of payment.

    (ii)   that the Charterers shall further bear and reimburse forthwith to the Owners the costs of this my Final Arbitration Award in the sum of £1,500 together with interest thereon at the rate of 7.75 (seven and three-quarters per cent) per annum or pro rata from 27th December 2006 until the date of reimbursement.

**GIVEN** under my hand at the seat of the arbitration in London, England this  17th day of July 2007.

Patrick O'Donovan

Witness

Sole Arbitrator

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

BETWEEN:-

### TITAN MARITIME COMPANY LIMITED
of Valletta, Malta                          <u>Claimants</u>

(Owners)

- and -

### M/S ROTOMAC EXPORT PVT LTD.
of Kanpur, India                          <u>Respondents</u>

(Charterers)

### "ALINDA"
<u>Charterparty dated 1st August 2006</u>

---

### FINAL ARBITRATION AWARD

---